# Matter of B-N-K-, Respondent

*Decided June 6, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Because Immigration Judges and the Board have a duty to promptly and fairly bring removal proceedings to a close, whether there are persuasive reasons for a case to proceed and be resolved on the merits is the primary consideration in determining whether administrative closure is appropriate under the totality of the circumstances. *Matter of W-Y-U-*, 27 I&N Dec. 17 (BIA 2017), reaffirmed.

(2) A pending application for Temporary Protected Status generally will not warrant a grant of administrative closure.

FOR THE RESPONDENT: Daniel P. Brown, Esquire, Minneapolis, Minnesota

FOR THE DEPARTMENT OF HOMELAND SECURITY: Allen Ross, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; MULLANE and GOODWIN, Appellate Immigration Judges.

MALPHRUS, Chief Appellate Immigration Judge:

This matter was last before the Board on October 21, 2024, when we dismissed the Department of Homeland Security's ("DHS") interlocutory appeal from the Immigration Judge's May 7, 2024, decision, granting the respondent's motion to administratively close proceedings. DHS subsequently filed a motion to recalendar removal proceedings with the Immigration Judge, which was denied on November 19, 2024. DHS has filed an interlocutory appeal from that denial. For the reasons discussed below, the Board will take jurisdiction over the interlocutory appeal, the appeal will be sustained, and the record will be remanded.

## I. PROCEDURAL HISTORY

On May 6, 2024, the respondent, who is detained in DHS custody, filed a written motion seeking administrative closure of her removal proceedings based on her pending application for Temporary Protected Status ("TPS"), under section 244(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1254(a) (2018), before the United States Citizenship and

Immigration Services ("USCIS").  The Immigration Judge granted the motion by form order, stating that the motion was a joint request by both parties.  DHS filed an interlocutory appeal of the Immigration Judge's decision, asserting that no joint motion had been filed, and administrative closure of the respondent's removal proceedings was not appropriate.  On October 21, 2024, the Board declined to accept jurisdiction over DHS' appeal, noting DHS could move to recalendar proceedings with the Immigration Court.  DHS subsequently filed a motion to recalendar proceedings with the Immigration Judge.  On November 19, 2024, the Immigration Judge denied DHS' motion for lack of changed circumstances or good cause. DHS filed an interlocutory appeal of the Immigration Judge's denial of its motion to recalendar.  This interlocutory appeal is presently before us.[1]

## II. DISCUSSION

Administrative closure is intended to be a docket management tool "used to temporarily remove a case from an Immigration Judge's active calendar or from the Board's docket." *Matter of W-Y-U-*, 27 I&N Dec. 17, 17–18 (BIA 2017) (quoting *Matter of Avetisyan*, 25 I&N Dec. 688, 692 (BIA 2012)).  It is not a form of relief from removal, does not provide an alien with any immigration status, and is not intended to be used to delay proceedings indefinitely. *See id.* at 18–19.

Prior to *Matter of Avetisyan*, administrative closure required agreement by both parties. *Matter of Gutierrez*, 21 I&N Dec. 479, 480 (BIA 1996) (citing cases for the proposition that "[a] case may not be administratively closed if opposed by either of the parties"), *overruled by Matter of Avetisyan*, 25 I&N Dec. 688 (BIA 2012).  In *Matter of Avetisyan*, 25 I&N Dec. at 692–94, the Board reversed over two decades of prior precedent and held that a party's opposition was not an absolute bar to administrative closure.  The

---

[1]   While the Board does not ordinarily entertain interlocutory appeals, we have expressly held that a party "may seek immediate review of an Immigration Judge's decision to administratively close proceedings by filing an interlocutory appeal." *Matter of Avetisyan*, 25 I&N Dec. 688, 695 (BIA 2012).  We acknowledge our prior decision declining to exercise jurisdiction over this matter created uncertainty as to DHS' ability to seek review of the grant of administrative closure and what was required for recalendaring in this case. To avoid confusion, we will exercise our jurisdiction over the present interlocutory appeal and consider the Immigration Judge's grant of administrative closure and the denial of DHS' motion to recalendar.

Board went on to hold that the Immigration Judge should instead consider the following factors:

> (1) the reason administrative closure is sought; (2) the basis for any opposition to administrative closure; (3) the likelihood the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party, if any, in contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceedings . . . when the case is recalendared.

*Matter of Avetisyan*, 25 I&N Dec. at 696.[2]  The Board later clarified that "the primary consideration . . . is whether the party opposing administrative closure has provided a persuasive reason for the case to proceed and be resolved on the merits."  *Matter of W-Y-U-*, 27 I&N Dec. at 20.

After the Immigration Judge granted administrative closure in this case, the agency enacted regulations codifying the *Matter of Avetisyan* factors. 8 C.F.R. §§ 1003.1(l)(3)(i), 1003.18(c)(3)(i) (2025); Efficient Case and Docket Management in Immigration Proceedings, 89 Fed. Reg. 46742, 46789, 46792 (May 29, 2024).  The regulations added two additional factors: "[a]ny requirement that a case be administratively closed in order for a petition, application, or other action to be filed with, or granted by, DHS" and "[t]he ICE detention status of the noncitizen."  8 C.F.R. §§ 1003.1(l)(3)(i)(C), (H), 1003.18(c)(3)(i)(C), (H).  The regulations further provide that Immigration Judges and the Board should consider all relevant factors when deciding whether to grant a motion for administrative closure or recalendaring, while observing that "[n]o single factor is dispositive." 8 C.F.R. §§ 1003.1(l)(3), 1003.18(c)(3); *see also Matter of Avetisyan*, 25 I&N Dec. at 696.  Whether administrative closure was appropriate in this case is a legal determination the Board reviews de novo.  *See* 8 C.F.R. § 1003.1(d)(3)(ii).

---

[2]  At the time, the holding in *Matter of Avetisyan*, 25 I&N Dec. at 692–96, was a major change that took the decision regarding whether a case should proceed to a conclusion out of the hands of the parties and placed it on judges through a multiprong, fact-specific test that they must apply on a case-by-case basis.  Minimal explanation was given as to why such a significant change was warranted.  *See generally Gamble v. United States*, 587 U.S. 678, 691 (2019) (emphasizing that "a departure from precedent 'demands special justification,'" especially when the departure would overrule numerous major decisions spanning many years (citation omitted)).

A. Administrative Closure Standard

The regulations provide a list of factors to consider in determining whether to administratively close or recalendar a case, but they do not prescribe the manner in which the factors should be considered in relation to each other.  Although the factors must be considered in the totality and no one factor is dispositive, the regulations do not require Immigration Judges and the Board to give each factor equal importance.  *See* 8 C.F.R. §§ 1003.1(l)(3)(i)–(ii), 1003.18(c)(3)(i)–(ii).

In evaluating when administrative closure is appropriate, it is important to consider the purpose of administrative closure and the role of Immigration Judges and the Board within the immigration system.  Removal proceedings are adversarial in nature, and the role of Immigration Judges and the Board is to adjudicate whether an alien is removable and eligible for relief from removal in cases brought by DHS.  *See Matter of W-Y-U-*, 27 I&N Dec. at 19; *Matter of Gomez-Beltran*, 26 I&N Dec. 765, 767 (BIA 2016), *aff'd*, 792 F. App'x 498 (9th Cir. 2020).  The Board and Immigration Judges have no role in DHS' exercise of prosecutorial discretion, including its decision to institute proceedings against an alien and to prosecute those proceedings to a conclusion.  *See, e.g.*, *Matter of Quintero*, 18 I&N Dec. 348, 350 (BIA 1982); *Matter of Roussis*, 18 I&N Dec. 256, 258 (BIA 1982); *Matter of Yazdani*, 17 I&N Dec. 626, 630 (BIA 1991).  "Once deportation proceedings have been initiated by [DHS], the immigration judge may not review the wisdom of [DHS'] action, but must execute his duty to determine whether the deportation charge is sustained by the requisite evidence in an expeditious manner."  *Matter of Quintero*, 18 I&N Dec. at 350.

"There is an important public interest in the finality of immigration proceedings," *Matter of W-Y-U-*, 27 I&N Dec. at 19, and in "bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *INS v. Abudu*, 485 U.S. 94, 107 (1988).  The expectation is that proceedings initiated by DHS will proceed to a conclusion.  Consequently, although "administrative closure may be appropriate to await an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court," *Matter of Avetisyan*, 25 I&N Dec. at 692, the basis for granting administrative closure must be related to achieving some foreseeable resolution to the ongoing proceedings within a reasonably short period of time.  Administrative closure should not be utilized to delay proceedings indefinitely and must be limited to a temporary period.  *See Matter of W-Y-U-*, 27 I&N Dec. at 20 ("An unreasonable delay in the resolution of the

proceedings may operate to the detriment of aliens by preventing them from obtaining relief that can provide lawful status or, on the other hand, it may 'thwart the operation of statutes providing for removal' by allowing aliens to remain indefinitely in the United States without legal status." (citation omitted)).

Although Immigration Judges have a general duty to help develop the record, neither Immigration Judges nor the Board should act in the place of either of the parties. *See Matter of J-F-F-*, 23 I&N Dec. 912, 922 (A.G. 2006) ("It is appropriate for Immigration Judges to aid in the development of the record . . . but the Immigration Judge must not take on the role of advocate."). Thus, in considering whether administrative closure is appropriate under the totality of the circumstances, Immigration Judges and the Board should as an initial matter strongly consider the views of the parties. *See* 8 C.F.R. §§ 1003.1(l)(3)(i)(A)–(B), 1003.18(c)(3)(i)(A)–(B). While a party's opposition to administrative closure is not dispositive, Immigration Judges and the Board should carefully consider the reasons for the party's opposition. *See* 8 C.F.R. §§ 1003.1(l)(3)(i)(B), 1003.18(c)(3)(i)(B). Because Immigration Judges and the Board have a duty to promptly and fairly bring removal proceedings to a close, whether there are persuasive reasons for a case to proceed and be resolved on the merits is the primary consideration in determining whether administrative closure is appropriate under the totality of the circumstances. *See* 8 C.F.R. §§ 1003.1(l)(3)(i)(B), 1003.18(c)(3)(i)(B); *see also Matter of W-Y U-*, 27 I&N Dec. at 20.[3]

## B. Application to These Proceedings

Turning to DHS' present interlocutory appeal, we conclude that the grant of administrative closure was in error and recalendaring these proceedings is appropriate. Here, DHS asserts, and the record reflects, that it did not join in the respondent's motion to administratively close proceedings, and DHS reiterates on appeal that it opposed administrative closure. The Immigration Judge, therefore, clearly erred in finding that the motion for administrative closure was a joint request from both parties. *See Matter of R-S-H-*, 23 I&N Dec. 629, 637 (BIA 2003) (discussing the clear error standard of review for

---

[3] We recognize that the commentary to the final rule states that "to the extent that the Board's holding in *Matter of W-Y-U-* . . . is inconsistent with the unweighted, 'totality of the circumstances' standard implemented by this rule, *Matter of W-Y-U-*, 27 I&N Dec. 17, is superseded." 89 Fed. Reg. at 46753. In the context of administrative closure, "primary consideration" refers to the initial and important but not overriding consideration. Thus, in our view, the holding in *Matter of W-Y-U-* is consistent with the totality of the circumstances standard.

factual findings).  Consequently, the Immigration Judge erred in granting the motion in a summary order without further analysis or explanation.

Further, in considering the respondent's original motion and applying the factors articulated in *Matter of Avetisyan*, 25 I&N Dec. at 696, and codified in the regulations, we are unpersuaded that administrative closure was warranted under the totality of the circumstances.  The reason the respondent sought administrative closure was to await a decision on her pending application for TPS, arguing in her motion that the "pending immigration benefit makes any adverse decision on her asylum claim untimely."  The respondent claimed to be prima facie eligible for TPS, but did not articulate the anticipated duration of the closure or how approval of her TPS application would impact the outcome of removal proceedings when the case is recalendared.  DHS opposed administrative closure on the basis that the respondent's asylum application could be adjudicated on the merits and removal proceedings could be completed without any adverse effect on the pending application for TPS.

Considering the totality of the circumstances, including whether there is a persuasive reason for removal proceedings to be resolved on the merits, we conclude that administrative closure is not warranted.  The respondent has an application for asylum and related relief ripe for adjudication before the Immigration Judge.  The resolution of the respondent's application for asylum and related relief, and any direct appeal taken thereof, would conclude removal proceedings before us.  Moreover, TPS is a collateral benefit that does not impact the outcome of removal proceedings.  Although USCIS maintains initial jurisdiction over the respondent's application for TPS, the respondent would remain eligible for TPS even with a final order of removal.  *See* INA § 244(a)(1)(A), 8 U.S.C. § 1254a(a)(1)(A); 8 C.F.R. § 244.7(a), 1244.7(a) (2025); *see also Duarte v. Mayorkas*, 27 F.4th 1044, 1053–54 (5th Cir. 2022) (discussing the relationship between removal orders and TPS).  Further, TPS only serves to temporarily protect recipients from removal.  *See Matter of Sosa Ventura*, 25 I&N Dec. 391, 393 (BIA 2010) (finding that the grant of TPS only protects the respondent from the execution of a removal order during a specified period, but that the respondent remains removable based on the charge of inadmissibility).  Thus, the ultimate outcome of these removal proceedings would be unaffected by any action taken on the respondent's application for TPS.

Moreover, the appropriate outcome in this case is made clearer by the fact that the respondent is detained, which is an express factor under the regulations.  8 C.F.R. §§ 1003.1(l)(3)(i)(H), 1003.18(c)(3)(i)(H).  In

*Matter of L-N-Y-*, 27 I&N Dec. 755, 759 (BIA 2020), we held that in assessing whether there is "good cause" for a continuance based on an application for collateral relief, Immigration Judges should consider an alien's detained status. We further highlighted that "[g]ranting an indeterminate continuance greatly impacts administrative efficiency in a typical case, but particularly where . . . the alien is detained." *Id*. In the administrative closure context where there is often uncertainty as to the duration of the closure, an alien's detained status is of particular significance and will generally counsel strongly against a grant of administrative closure.

Although the respondent's detained status supports our conclusion that administrative closure is not warranted in this case, the result here would have been the same even if the respondent were not detained. A pending application for TPS generally will not warrant a grant of administrative closure.

## III. CONCLUSION

While Immigration Judges and the Board should consider all relevant factors when adjudicating motions for administrative closure and recalendaring, whether there are persuasive reasons for a case to proceed and be resolved on the merits is the primary consideration. In this respect, we reaffirm our holding in *Matter of W-Y-U-*, 27 I&N Dec. 17, 20 (BIA 2017).

For the reasons discussed above, we conclude that administrative closure was not warranted in this case and will reverse the Immigration Judge's denial of DHS' motion to recalendar proceedings. Accordingly, we will sustain DHS' appeal, reinstate these removal proceedings, and remand the record for further proceedings.

**ORDER:** DHS' appeal is sustained, the November 19, 2024, decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.